UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC POGUE,

      Plaintiff,

v.

OAKLAND UNIVERSITY and
ASHLEY STONE,

      Defendants.

_____/

Case No.  2:24-cv-11134
District Judge Linda V. Parker
Magistrate Judge Kimberly G. Altman

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (ECF No. 20)[1]

### I.      Introduction

This is an employment discrimination case.  Plaintiff Eric Pogue (Pogue) is

suing Oakland University and Ashley Stone claiming disability discrimination in

violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act,

failure to accommodate in violation of the ADA, First Amendment retaliation, and

violations of the Equal Protection and Due Process Clauses.  *See* ECF No. 8.

Before the Court is Pogue's motion to compel (ECF No. 20), which has been

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for
decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(1).  Additionally, the undersigned notified the parties that the motions would
be determined without a hearing.  (ECF No. 26).

1

referred to the undersigned.  (ECF No. 21).  Under the current scheduling order, discovery closed on March 14, 2025, and dispositive motions were due by March 28, 2025.  (ECF No. 15).  For the reasons discussed below, Pogue's motion will be DENIED.

## II.     Background

### A.     Factual Background

Pogue filed his amended complaint on July 22, 2024.  (ECF No. 8).  In it, Pogue explains that he was the head coach of the men's soccer team at Oakland University from 2009 until 2024.  (*Id.*, PageID.93, 99).  In 2021, he began battling depression.  (*Id.*, PageID.94).  He alleges that because of his disability and the efforts he made to speak out about the challenges of mental health, his contract was terminated in February 2024 despite the team's success with him as coach.  (*Id.*, PageID.99).  Pogue alleges that the reason given for his termination was negative student athlete experience, which was based on surveys given to the student athletes.  (ECF No. 20, PageID.259-260).

On September 16, 2024, Pogue sent a set of requests for production that included "all student/athlete surveys of coaches for all sports conducted by Defendant, Oakland University since the 2018-2019 academic school year."  (ECF No. 25, PageID.1007).  The University objected, stating that that his request was

2

irrelevant and overbroad because it sought surveys for coaches who were not similarly situated to Pogue.  (*Id.*).

Defendants produced the surveys the student athletes completed about Pogue, and ultimately, after several meet and confers, they agreed to produce the surveys for the head coaches who were also supervised by Ashley Stone, the Sports Administrator, which included the coaches for women's basketball and softball.  (*Id.*, PageID.262).  Pogue alleges that there are sixteen remaining varsity sports whose head coaches received feedback via student athlete surveys.  (*Id.*, PageID.264).  These surveys are the subject of this motion.

On November 8, 2024, Pogue requested a conference with the district judge regarding discovery matters, which was held on November 20, 2024.  (ECF No. 25, PageID.1008).  According to the parties, the district judge indicated that she would not prevent Pogue from filing a motion to compel defendants to produce the remaining surveys. *See November 20, 2024 text-only order* ("The parties will submit a stipulated order regarding the agreed upon issues.  The Court authorized the filing of motions for the outstanding issues.").  Pogue did not file a motion following this conference.

Over two months after the conference, on February 12, 2025, Pogue deposed Steven Waterfield, the Director of Athletics.  (ECF No. 20-3).  Pogue says Waterfield testified that all head coaches report directly to him and that he is the

sole decision-maker on their hiring and firing.  (ECF No. 20, PageID.264).

Waterfield also said that his three considerations for whether a head coach was

performing their job duties adequately were 1) academic performance of the

student athletes; 2) competitive performance within the conference; and 3) the

student athlete experience.  (*Id.*).  According to Pogue, Waterfield admitted that he

was not terminated based on the first two considerations, which Pogue says leaves

only the student athlete experience as gleaned through the surveys.  (*Id.*,

PageID.265).  Waterfield also said the surveys indicated concerns about Pogue's

practice sessions, coaching style, communication, and overall team management,

which Waterfield said were the same issues that existed with Pogue each year since

2018, when the school first started using surveys.  (*Id.*, PageID.265-266).

On February 13, 2025, the day after Waterfield's deposition, Pogue again

raised the issue of the student surveys, asking defendants to reconsider their

position in light of Waterfield's testimony.  (ECF No. 25, PageID.1009).

Defendants again said no because there were no developments during the

deposition that would warrant reconsideration of their position.  (*Id.*).

A month later, on March 13, 2024, Pogue filed the instant motion to compel,

one day before discovery was scheduled to close.  (ECF No. 20).  On March 28,

2025, the deadline for dispositive motions, defendants filed a motion for summary

judgment.  (ECF No. 27).  Instead of filing a response, on April 15, 2025, Pogue

filed a motion to stay pending resolution of his motion to compel.  (ECF No. 31).

This motion was granted by the district judge, who indicated that "new deadlines

regarding the dispositive motion schedule… will be issued after the magistrate

judge's ruling on Mr. Pogue's motion to compel."  (ECF No. 32, PageID.1952).

B.     Parties' Arguments

Pogue asserts that limiting production of the student athlete surveys to the

sports supervised by Stone lacked any logical basis because Stone was not a

decision-maker in hiring or termination decisions.  (*Id.*, PageID.266).  Waterfield

testified that he was the sole decision-maker on terminating coaches, and that he

personally reviewed and put substantial weight on student athlete surveys when

making these decisions.  (*Id.*, PageID.270).  As a result, Pogue asserts that all

surveys are relevant to his claims of discrimination and pretext, primarily by

establishing whether similarly situated coaches received equally negative survey

results without facing disciplinary action.  (*Id.*, PageID.271).  He asserts that the

limited surveys produced, specifically from the women's basketball team,

indicated "trouble [sic] incidents far surpassing any alleged shortcomings

attributed to [Pogue]."  (*Id.*, PageID.266).  Despite this, Pogue says the women's

basketball coach was not terminated and never faced any additional requirements,

as Pogue did.  (*Id.*, PageID.271).  Pogue argues that this "strongly indicates that

Defendants selectively relied upon student-athlete survey data to justify [his] termination." (*Id.*, PageID.271).

Defendants' first argument is that the motion should be denied because it is untimely and will cause them significant prejudice. (ECF No. 25, PageID.1010). Defendants explain that Pogue has known about this dispute for six months and was authorized to file a motion to compel four months ago, but instead waited until the eve of the discovery deadline to file his motion without any explanation for the delay. (*Id.*). They argue that granting the motion would require reopening discovery, further prolonging the case and significantly prejudicing them. They say that even if Waterfield's deposition was necessary for his motion, Pogue had that information as of February 12, 2025, and the additional delay of four weeks was inexcusable. (*Id.*, PageID.1012).

In addition, the dispositive motion deadline was set for March 28, 2025, which has now passed, with defendants filing their motion for summary judgment on the deadline. (ECF Nos. 15, 27). Defendants says that granting the motion will require the parties to restart the summary judgment process at significant expense to defendants. (ECF No. 25, PageID.1013).

Defendants also explain that Pogue has not requested a formal extension of discovery, but the surveys themselves are not enough to establish that the other coaches are similarly situated, and defendants would have to devote substantial

time and resources into documenting differentiating or mitigating circumstances distinguishing the other coaches in their reply to their motion for summary judgment.  (*Id.*, PageID.1014).

Next, defendants argue that the other head coaches are not similarly situated to Pogue.  (*Id.*).  They explain that to be similarly situated, an individual must be comparable *in all respects*, including having the same supervisor.  (*Id.*). Defendants explain that Pogue seemingly claims Waterfield's testimony established that the other head coaches were similarly situated, but this is not the case.  (*Id.*, PageID.1017).  Waterfield explained that he terminated Pogue because the student athlete experience did not meet his expectations, and the trend of the program was not going in a positive direction.  (*Id.*).  He said that he assesses student athlete experience through his personal observations, conversations with Stone, and feedback from the student athlete surveys.  (*Id.*, PageID.1018).  In Pogue's case, he also based his decision on exit interviews from the faculty athletics representative and feedback from Stone's meetings with student athletes. (*Id.*).

As such, defendants assert that the surveys are just part of the overall student athlete experience, and feedback from Stone played a role in evaluating both Pogue's performance and Waterfield's understanding of the surveys.  (*Id.*, PageID.1018-1019).  It was Stone who was responsible for Pogue's annual

performance review, the day-to-day management of the sports program, and speaking directly with student athletes, which overall played a "pivotal role in Waterfield's use and assessment of the student surveys." (*Id.*, PageID.1019). In sum, defendants assert that all of this extra information from Stone provided "differentiating or mitigating circumstances" to distinguish other head coaches who she does not supervise. (*Id.*, PageID.1020).

In reply, Pogue argues first that no authority precludes the filing of a motion to compel before the close of discovery. (ECF No. 28, PageID.1800). He says that any delay in deposing Waterfield was due to defendants' refusal to produce the surveys when requested, defendants' counsel's vacation and unavailability, and winter weather conditions. (*Id.*). Pogue says that many of the cases defendants have relied on relate to motions filed after the discovery deadline had passed. (*Id.*).

Pogue also claims that he has diligently pursued discovery of the surveys throughout the litigation by requesting production, conducting meet and confers, and seeking Court intervention. (ECF No. 28, PageID.1801). Following the status conference, he says he conducted additional discovery to establish the survey's relevance per the Court's guidance, and "promptly fil[ed] this Motion to Compel upon receiving the Court's permission." (*Id.*, PageID.1801-1802).

Regarding the relevance of the surveys, Pogue says that defendants admitted to relying on the surveys to justify his termination. (*Id.*, PageID.1802). He argues

8

that all other head coaches at the University are similarly situated because they report directly to Waterfield.  (*Id.*, PageID.1803).  He also argues that during some periods of time during which defendants claim Pogue's surveys demonstrated a sub-par student experience, Waterfield was also the Sports Administrator who oversaw Pogue.  (*Id.*, PageID.1803).  Therefore, Pogue argues, at a minimum defendants must produce the student athlete surveys for the sports Waterfield was Sports Administrator for, including men's basketball, women's tennis, baseball, men's golf, women's golf, men's swimming, and women's swimming and diving. (*Id.*, PageID.1804).  Finally, he argues that to be similarly situated, the other head coaches did not need to have the same direct supervisor because Waterfield was the decisionmaker for all head coaches.

### III.    Legal Framework

The scope of discovery, which permits a party to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," is always subject to being "limited by court order[,]" and thus, within the sound discretion of the Court.  Fed. R. Civ. P. 26(b)(1); *see also State Farm Mut.*

9

*Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D.

Mich. 2017) ("Further, a court has broad discretion over discovery matters, and in

deciding discovery disputes, a magistrate judge is entitled to that same broad

discretion, and an order of the same is overruled only if the district court finds an

abuse of discretion.") (internal citation omitted).  Discovery is more liberal than

even the trial setting, as Rule 26(b) allows discovery of information that "need not

be admissible in evidence."  Fed. R. Civ. P. 26(b)(1).

If a party believes that another party is not complying with discovery

requests, then it may file a motion to compel.  Motions to compel are governed by

Fed. R. Civ. P. 37(a)(3)(B), which states, "A party seeking discovery may move

for an order compelling an answer, designation, production, or inspection."  If the

motion is granted, "the court must, after giving an opportunity to be heard, require

the party or deponent whose conduct necessitated the motion, the party or attorney

advising the conduct, or both to pay the movant's reasonable expenses incurred in

making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

## IV.    Discussion

Defendants argue that Pogue's motion should be denied because it was

untimely and because the information Pogue seeks is not relevant.  They say that

granting the motion would prolong the case and cause them prejudice.  *See*

*Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200 (E.D. Mich. 2002)

10

("In numerous cases, courts have denied tardy discovery motions that were filed after the close of discovery, especially where the moving party had all the information it needed to timely file the discovery motion, and its late filing would prejudice the nonmoving party."); *Ginett v. Fed. Express Corp.*, 166 F.3d 1213 (6th Cir. 1998) (unpublished table decision) ("[A] grant of [the plaintiff's] motion would have compelled [the defendant] to disclose documents after the expiration of the discovery deadline. Thus, the district court properly denied his untimely motion…"); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, No. 03-cv-760, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004) (denying a motion to compel filed four days before the discovery deadline because "[w]here a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion."); *Sompo Am. Ins. Co. v. FCA US LLC*, No. 20-cv-10734, 2022 WL 1553791, at *3 (E.D. Mich. May 17, 2022) ("[P]laintiff's decision to wait until the final day of fact discovery to file its motion to compel . . . has already prejudiced Defendants.").

Defendants further note that just last month, this Court denied a motion to compel filed after the close of discovery, explaining that it was "too late" because the plaintiff had received permission to file the motion nearly 90 days before the close of discovery and granting the motion would have required the Court to reopen discovery. *Ashby v. A&J Brothers, Inc.*, No. 23-cv-12152, 2025 WL

11

870130, at *1 (E.D. Mich. Mar. 20, 2025).  The Court also explained that the plaintiff had not "provided any support or explanation for her delayed motion."  *Id.* Defendants assert that the same logic applies here because Pogue waited until one day before discovery closed to file his motion and has not given any explanation for the delay.  (ECF No. 25, PageID.1012).

Pogue, on the other hand, argues that the cases defendants cite relate to motions filed after discovery closed.  He distinguishes *Sompo* by arguing that the "prejudice" the court spoke of was related to the plaintiff's non-disclosure of expert witnesses and not document production.  *See Sompo Am. Ins. Co.*, 2022 WL 1553791 at *1, 3.  He further says that in *Suntrust*, the motion to compel was filed 18 months after discovery, and in *Ginnet*, discovery had already been extended multiple times and plaintiff failed to include the request in an earlier motion even though the plaintiff had known about the document at the time.  *See Suntrust Bank*, 210 F.R.D. 196; *Ginett*, 166 F.3d 1213.  Further, in *Ashby*, the motion to compel was filed one month after the close of discovery.  *See Ashby*, 2025 WL 870130.

Although Pogue is correct that many of the cases defendants cite involve motions to compel filed after the close of discovery, much of the same logic applies where the motion was filed one day before the close of discovery.  Pogue had all the information he needed to file his motion by February 12 at the *latest*, and his decision to file the motion the day before discovery closed would

12

undoubtedly cause prejudice to defendants if it were granted because it would require them to produce documents after the close of discovery and potentially redo their already filed motion for summary judgment. *See, e.g.*, *Suntrust Bank*, 210 F.R.D. at 200 (explaining that there was no reason for the plaintiff to not have filed its motion to compel earlier); *Ginett*, 166 F.3d (explaining that the plaintiff knew of the document issue long before the discovery deadline and granting the motion would require the defendant to disclose documents after the expiration of the discovery deadline).

This Court in *Ashby* denied the plaintiff's motion to compel filed a month after the close of discovery because she had received permission from the Court to file her motion 90 days before discovery closed and had no support or explanation for filing her motion more than 120 days later. *Ashby*, No. 23-cv-12152 at *1. Even though this case dealt with a motion filed after the deadline, its reasoning applies equally here. Pogue received permission to file his motion on November 20, 2024. By this time, defendants had already made it abundantly clear that they had no intention of providing Pogue with the surveys for the head coaches not supervised by Stone. Instead of promptly filing his motion to compel and allowing time for it to be resolved before the discovery deadline, Pogue waited until March 13, 2025 – 113 days later – to file his motion. This choice, by design, would require defendants to produce documents after the close of discovery when it

13

otherwise would not have been necessary.  *See Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 1680109, at *5 (W.D. Ky. May 14, 2012) ("Plaintiffs have had substantial time in which to file a motion to compel and have failed to articulate any justification for their failure to do so until six months after the defendants' responses were served and ten days before the close of discovery."); *Cont'l Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-CV-20-HSM-SKL, 2017 WL 11180629, at *2 (E.D. Tenn. June 15, 2017) ("Motions to compel filed within days of the close of discovery are untimely.").

Pogue argues that he was diligent at all times in seeking the surveys; however, as explained above, even if his motion hinged on Waterfield's testimony, he had this information on February 12, an entire month before he filed his motion. He has given no reasonable explanation for the month-long delay in filing. *See also Boone v. Stieve*, 642 F. Supp. 3d 597, 603 (E.D. Mich. 2022) ("Absent express permission from the court, parties should assume that the discovery deadline is the end of discovery.").

In sum, although Pogue says that the surveys are essential to his case to show pretext, he has not justified his long delay in seeking such essential information.  He waited until the very eve of discovery to ask for the information that the district court gave him permission to pursue nearly four months prior.

14

Pogue's motion must therefore be denied because it is untimely and would prejudice defendants.

Further, even if Pogue had timely filed his motion, he has not established that the information he seeks is relevant. To do so, he must establish that the other head coaches whose student athlete survey results he wishes to compel were similarly situated to him. "To be similarly situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 848 (6th Cir. 2015) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). "Although exact correlation is not required, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Id.* (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)).

Pogue relies on *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, in which the court recognized coaches as similarly situated when they shared primary responsibilities, evaluation criteria, and reported to the same ultimate decisionmaker. No. 3:04-0762, 2006 WL 8436374, at *12 (M.D. Tenn. Apr. 5,

2006), *rev'd sub nom. Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, Tenn., 594 F.3d 476 (6th Cir. 2010). He also asserts that in *Mehus v. Emporia State Univ.*, the court found that differences in NCAA violations, coaching responsibilities, publicity, and revenue generation did not preclude coaches from being similarly situated because their fundamental responsibilities were the same. 222 F.R.D. 455, 473-474 (D. Kan. 2004). He relies on *Beltz* and *Minnis* for similar propositions. *See Beltz v. Univ. of Pittsburgh*, No. 2:19-CV-1572-NR, 2021 WL 5920807, at *3 (W.D. Pa. Dec. 15, 2021); *Minnis v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, No. CIV.A. 13-5-BAJ-RLB, 2013 WL 6271940, at *8-9 (M.D. La. Dec. 4, 2013), *objections overruled sub nom. Minnis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2014 WL 12811456 (M.D. La. Aug. 15, 2014).

Further, Pogue asserts that because he reported to the same ultimate decisionmaker as the other head coaches – Waterfield – they were similarly situated. *See Walker v. Ohio Dep't of Rehab. & Correction*, 241 F. App'x 261, 266 (6th Cir. 2007) (holding that the critical factor is the consistency or coordination in the decision-making process, not identical immediate supervision); *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (holding that the same supervisor standard "has never been read as an inflexible requirement"); *Raciti-*

16

*Hur v. Homan*, 181 F.3d 103, at *4 (6th Cir. 1999) (holding that a plaintiff need only demonstrate another employee received more favorable treatment.).

However, although Pogue and the head coaches whose surveys he wishes to compel reported to Waterfield as the ultimate decisionmaker, their day-to-day supervisors were not the same, and Waterfield testified that he relied on *Stone's* feedback as Pogue's day-to-day supervisor when deciding whether to terminate him.  Significantly, during his deposition Waterfield said that *in addition* to the student athlete surveys, he relied on personal observations, feedback from Stone, exit interviews from the faculty athletics representative, and feedback from meetings Stone had with students.  (ECF No. 25-3, PageID.1028).  His testimony therefore establishes that his interactions and feedback from Stone were factors that went into the decision to terminate Pogue, which are factors that are not present for those head coaches who do not report to Stone.

It is true that the Sixth Circuit has said that the same supervisor requirement "has never been read as an inflexible requirement" and can be irrelevant to a plaintiff's claim in certain cases.  *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (quoting *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 479 (6th Cir. 2003)).  However, whether it is relevant depends on the facts and circumstances of each case.  *Id.*; *see Walker v. Ohio Dep't of Rehab. & Correction*, 241 F. App'x 261, 267 (6th Cir. 2007) (recognizing that the identity of a supervisor is relevant where

17

the court is asked to compare discretionary discipline based on fact-specific conduct).  Beyond stating that in some cases it is not relevant, Pogue has not explained how it is not relevant here given that Waterfield relied on Stone's feedback and judgment when making his decision.

The main case from this circuit that Pogue cites as an example is *Harris*, which he relies on for the proposition that coaches are similarly situated when they share primary responsibilities, evaluation criteria, and report to the same ultimate decisionmaker.  2006 WL 8436374.  In *Harris*, the plaintiff was the head coach of the boys' varsity basketball team, and he argued that a prior head coach for the same boys' basketball team was similarly situated.  *Id.* at *11-12.  All aspects of their jobs were the same, so the question came down to whether they were both appointed by and therefore reported to the Board of Education as the ultimate decisionmaker.  *Id.*  This case largely highlights that the ultimate decisionmaker must be the same for two coaches to be similarly situated – a fact which is not disputed here.  (*Id.*).  As discussed above, Pogue's use of *Harris* does not illuminate how having the same immediate supervisor is not required for two coaches to be similarly situated *in this case*.

Pogue's argument that he at one point reported to Waterfield as Sports Administrator also fails.  It is unclear what point Pogue is trying to make here; he does not indicate that Waterfield claimed to rely on his own experience as Pogue's

Sports Administrator in deciding to terminate him.  Instead, Waterfield made it clear that he relied on input from Stone, Pogue's current Sports Administrator, in making the decision, which is precisely why defendants produced student athlete surveys only for those head coaches who were supervised by Stone.

Overall, even if Pogue had timely filed his motion, he has not met his burden of establishing the relevance of the student athlete surveys for the head coaches not supervised by Stone by showing that those coaches were similarly situated to him.

## V.    Conclusion

For the reasons discussed above, Pogue's motion to compel (ECF No. 20) is DENIED.

SO ORDERED.

Dated: April 22, 2025                                  s/Kimberly G. Altman
Detroit, Michigan                                      KIMBERLY G. ALTMAN
                                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2025.

                                                       s/Dru Jennings
                                                       DRU JENNINGS
                                                       Case Manager